# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

TRAVIS C. HUNTER            )
                                   )
            Plaintiff,     )
vs.                            )       NO. CIV-14-0829-HE
                                   )
JOHN M. McHUGH, Secretary,   )
DEPARTMENT OF THE ARMY,    )
                                   )
            Defendant.    )

## ORDER

Plaintiff Travis C. Hunter filed this suit against the Secretary of the Department of the Army (DOA), arising out of his employment as a civilian employee at Fort Sill. His original complaint asserted claims for discrimination and retaliation based on his race, age, and gender. The court dismissed the original complaint because the retaliation claim had not been administratively exhausted and the discrimination claims were not sufficiently pled. [Doc. No. 11]. Plaintiff then filed an amended complaint, and the court dismissed the claims that were based on events outside the relevant time period for administrative exhaustion [Doc. No. 16]. The claims now remaining are based on plaintiff's allegation that in mid-August, 2009, he learned facts leading him to believe that a promotion promised to him in 2005 was being wrongfully denied. Defendant seeks summary judgment as to the remaining claims.

Summary judgment should be granted where—in light of the pleadings, discovery materials, and any affidavits—there is no "genuine dispute" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material "if

it might affect the outcome of the suit." Bennett v. Windstream Communications, Inc., 792 F.3d 1261, 1265 (10th Cir. 2015). The court must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005).

## Factual Background

The facts of this case are substantially undisputed.[1] Plaintiff was hired by defendant in February 2005 to work in the logistics branch of the Operations Division of the Directorate of Training and Doctrine ("DOTD") at Fort Sill. Initially, he was to perform clerical duties and had a GS-5 designation.[2] Two months later, he received a promotion to GS-7. In July of that year, the logistics supervisor—a military officer—was deployed, and plaintiff was instructed to take over operation and supervision of the logistics branch. According to plaintiff, he was told then that he would be promoted to a GS-11 as a result of his change in duties and position. In February 2007, plaintiff received a promotion to GS-9. Shortly thereafter, plaintiff told his supervisor he was dissatisfied with the promotion because he was ranked as a GS-9 rather than a GS-11. According to plaintiff, his supervisor told him there

---

[1]*Defendant's brief sets out as undisputed facts a detailed description of the history of plaintiff's employment, the positions he and others held, and the structure of positions and activities at Fort Sill in light of the changes made by the Base Realignment and Closure ("BRAC") process and otherwise. Defendant purports to dispute some of the asserted facts, but virtually all of the purported disagreements are non-responsive to the facts asserted and do not create factual disputes.*

[2]*The general schedule or "GS" classification and pay system applies to federal civilian employees. The system grades positions from lowest ranking of one to highest ranking of fifteen, i.e. GS-1 to GS-15.*

were insufficient funds to pay him at a GS-11 rank.[3]  In May 2009, plaintiff's supervisors requested that he receive a GS-11 designation.  In August 2009, plaintiff filed an Equal Employment Opportunity ("EEO") complaint, apparently alleging disparate treatment in the form of failure to promote him earlier.  After multiple attempts between May and August by his supervisors to secure the promotion of plaintiff to a GS-11 level, the promotion was approved in September of 2009.

Mr. Hunter's claim of disparate treatment is based largely, if not exclusively, on evidence as to the treatment of another civilian employee, Joann Knight.  Like the logistics branch, in which plaintiff was employed, the library branch is one of five branches under the Operations Division at Fort Sill.  Ms. Knight was employed in the library branch.

The library branch was headed by Ms. Duckworth, a GS-11 library supervisor.  Some time in 2005, she was transferred to an overseas posting for a period of two years, but retained rights to return to the position.  Ms. Knight was hired at that time as a temporary replacement, at a GS-11 level.  When Ms. Duckworth's assignment was extended for one year, Ms. Knight's term contract was also extended.  After Ms. Duckworth returned to the supervisory position in 2008, Ms. Knight's temporary contract was extended so she could perform duties relating to the digitization and transfer of library materials from Fort Bliss to Fort Sill due to the BRAC process.  A year later, Fort Sill received three library positions due to the BRAC transfers, and one of these became a Digitization Librarian position.  Ms.

---

[3]*Plaintiff's submissions do not explicitly indicate when the alleged statement as to funds availability was made, but they suggest it was in 2007 after plaintiff expressed dissatisfaction with being promoted to GS-9.*

Knight was selected for the position. The position was initially classified as a GS-9 position but, after Ms. Knight was selected for it, her supervisor sought to upgrade the position to a GS-11, the pay grade Ms. Knight already had. Mr. Hunter's evidence is that he learned of this upgrade on August 14, 2009, viewed it as proof of disparate treatment, and that it caused him to file his EEO complaint. Various administrative proceedings followed which were decided adversely to Mr. Hunter, and he then filed this suit.

Discussion

For multiple reasons, the court concludes defendant's motion for summary judgment should be granted. Plaintiff failed to timely pursue his administrative remedies and, even if the timeliness issue be overlooked, he has failed to offer evidence sufficient to support an inference that the defendant's reasons for its actions were pretextual or otherwise improper.

Federal employees must exhaust administrative remedies before seeking judicial review of claims of unlawful discrimination. Coffman v. Glickman, 328 F.3d 619, 623–24 (10th Cir. 2003). This process is initiated by contacting an EEO counselor and must begin within forty-five days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). Each discrete incident that would qualify as a separate unlawful employment practice, such as failure to promote or wrongful termination, requires administrative exhaustion within the relevant time period. Martinez v. Potter, 347 F.3d 1208, 1210–11 (10th Cir. 2003).

The time to file an EEO complaint generally begins to run when the disputed employment practice is first announced to the plaintiff. Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1176–77 (10th Cir. 2011). The focus for the time of accrual is when the

plaintiff discovered, or should have discovered, the injury rather than the discriminatory intent.  Id.

Here, plaintiff's alleged injury was made apparent by at least 2007, when he received a promotion to GS-9 instead of GS-11.[4]  He plainly knew then that what he viewed as a promise of a promotion to GS-11 would not be honored.   He complained to his supervisor about the promotion and was apparently told that the department lacked the funds to pay him at a GS-11 rate.  But in any event, he did not file an EEO complaint then, when he learned of the non-promotion.  Instead, he waited an additional two years to do so, after he learned the information about Ms. Knight's circumstances which he viewed as proof of discriminatory intent.  Under the above authorities, that sequence does not reflect timely initiation of the EEO process.

Further, even assuming plaintiff's submissions make out a prima facie case for purposes of the McDonnell Douglas test,[5] the court concludes plaintiff has not produced evidence sufficient to support an inference of pretext.[6]

---

[4]*He indicates the promise was made in 2005, so he arguably knew of the "failure to promote" even sooner.*

[5] *Where a party relies on indirect evidence of discrimination, a court analyzes the claims employing the burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  A plaintiff must offer evidence sufficient to make out a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to offer a legitimate, non-discriminatory reasons for its actions.  Once the defendant does so, the burden then shifts back to the plaintiff to produce evidence which would support an inference that the defendant's stated reason is pretextual.*

[6]*The defendant essentially argues that its actions and their timing were a function of the federal pay system and the focus on meshing the operations from the two bases incident to the BRAC process.*

Plaintiff's suggestion of discrimination and pretext is, as noted above, based on what he views as the more favorable treatment of Ms. Knight. However, in order for different treatment to be meaningful in this context, the other employee must be similarly situated. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006). Here, both plaintiff and Ms. Knight reported to the same supervisor, but there the similarity ends. Mr. Hunter was the highest ranking civilian in the logistics branch of the Operations Division. Ms. Knight was in the library branch, with decidedly different duties, performance standards and factors impacting position classification.[7] She was not a comparably situated employee for present purposes, and plaintiff's reliance on the treatment of Ms. Knight does not support an inference of pretext as to defendant's explanation of the reasons for its actions as to plaintiff.

Even if the court's conclusion as to being "comparably situated" was otherwise, the result would be the same for other reasons. Plaintiff's argument appears to be that (a) he was told at some point he would not be promoted to GS-11 because there were insufficient funds, (b) Ms. Knight was promoted to GS-11, indicating there really were sufficient funds, and (c) this inconsistency shows discriminatory intent in not promoting him. There are at least two

---

[7]*Defendant argues (and plaintiff does not appear to contest) that Ms. Knight's duties involved referencing, cataloging, and ordering books in the Artillery School library, and later involved digitization of the library, while plaintiff's duties included projecting office supply needs, overseeing service contracts for building maintenance and other functions, and tracking DOTD property. The differences in position are more significant than those involved in McGowan, where the court concluded a jailer and a booking officer in the same city jail were not comparably situated.*

major problems with that argument. First, plaintiff's evidence is that the promise of a promotion to GS-11 was made in 2005. The change in Ms. Knight's status did not occur until after Ms. Knight's May 2009 selection for the Digital Librarian position. The four year lapse of time undercuts any effort to view those circumstances as somehow showing pretext or falsity as to a 2005 statement to the effect that "we don't have the money." Second, even if the promise of a promotion was viewed in some broader sense—i.e. we will promote you whenever we have the money—Ms. Knight's treatment still is not inconsistent with the truth of the statement. The undisputed facts show that Ms. Knight was hired originally, in 2005, at a GS-11 level. The job she eventually received in 2009 was initially graded at a GS-9 level, then changed to a GS-11. At least on the present showing, there is no reason to assume that it cost the government any more to pay Ms. Knight under the restructured position description than it did to pay her on the GS-11 basis she had been paid on since 2005. In short, the treatment of Ms. Knight does not support an inference of pretext as to Mr. Hunter, even if they are assumed to be comparably situated.

Beyond those factors, plaintiff points to nothing else which would plausibly support an inference of pretext. He suggests he was promoted to GS-11 only after he filed his EEO complaint, but the undisputed facts are otherwise. It is undisputed that his supervisors were seeking an upgrade to the position well in advance of the August 2009 filing of the EEO complaint. Plaintiff's rise through the GS scale, if not "meteoric" as the defendant describes it, was at least swift, going from a GS-5 to a GS-11 in roughly four years. The undisputed facts show that the supervisors whose actions he now targets (as not trying hard enough) had

in fact tried, sometimes unsuccessfully, to get approval for an upgrade of plaintiff's position. Plaintiff's submissions do not support an inference of pretext, and ultimately of discrimination, as to the decisions, or timing of them, affecting his employment.

Conclusion

Plaintiff failed to timely pursue his administrative remedies as to the adverse action which he challenges. Further, even if timely pursuit were assumed, plaintiff's submissions are insufficient to create a justiciable controversy as to whether the challenged actions were based on impermissible grounds. Defendant's motion for summary judgment [Doc. No. 25] is **GRANTED**. Plaintiff's motion for extension of time [Doc. No. 29] is **STRICKEN** as moot.

**IT IS SO ORDERED**.

Dated this 16th day of March, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE